1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    NORTHERN DISTRICT OF CALIFORNIA

7

8   AFSHIN ADIBI, *et al.*,                         No. C-05-0605 EMC

9          Plaintiffs,

10         v.                                        **ORDER DENYING DEFENDANTS'**
                                                     **MOTION TO DISMISS**
11  CALIFORNIA STATE BOARD OF                        **(Docket No. 8)**
    PHARMACY, *et al.*,
12
           Defendants.
13
    _____/
14

15

16         Plaintiffs Afshin Adibi and International Pharmaceutical Services ("IPS") have filed suit

17  pursuant to 42 U.S.C. § 1983 against Defendants the California State Board of Pharmacy ("Board")

18  and its executive director Patricia Harris in her official capacity.  Plaintiffs seek (1) a declaration

19  that Defendants have violated the Dormant Commerce Clause by trying to revoke or suspend

20  Plaintiffs' pharmaceutical license and permit and (2) an injunction barring Defendants from

21  revoking or suspending the same.  Currently pending before the Court is Defendants' motion to

22  dismiss for failure to state a claim upon which relief can be granted and for lack of subject matter

23  jurisdiction.  Having considered the parties' briefs and accompanying submissions, the Court hereby

24  DENIES Defendants' motion to dismiss.

25                    **I.    FACTUAL & PROCEDURAL BACKGROUND**

26         In their complaint, Plaintiffs allege the following facts.

27         The Board is the official body of the state that regulates licensed pharmacists and licensed

28  wholesalers of pharmaceuticals in the State of California.  *See* Compl. ¶ 4.  Ms. Harris is the

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1   executive director of the Board.  *See id.*  Mr. Adibi has been licensed by the Board as a pharmacist

2   since 1991.  *See id.* ¶ 5.  Since 1995, IPS has held a wholesaler permit issued by the Board.  *See id.*

3   Mr. Adibi is the sole owner, president, and operator of IPS.  *See id.*

4        Beginning in 1995, Plaintiffs began to export pharmaceuticals to foreign countries.  *See id.* ¶

5   6.  All of the shipments were made by IPS at the instance and direction of Mr. Adibi.  *See id.*

6   Subsequently, Defendants brought an administrative proceeding against Plaintiffs, seeking to revoke

7   or suspend both Mr. Adibi's license and IPS's wholesaler permit based on Plaintiffs' exportation of

8   pharmaceuticals.  *See id.* ¶ 7.  After Defendants initiated the administrative proceeding against

9   Plaintiffs, Plaintiffs filed the instant suit, claiming that Defendants' attempt to revoke or suspend the

10  license and permit was a violation of the Commerce Clause of the Constitution.  *See id.* ¶ 9

11  ("Defendants' assertion of disciplinary authority over [P]laintiffs' license and permit, respectively,

12  on the basis of [P]laintiffs' conduct which took place entirely in foreign commerce violates that

13  Constitution of the United States in that it constitutes an extraterritorial application of the laws of

14  California and an attempt by [D]efendants as agents of the State of California to regulate the conduct

15  of foreign commerce."); *see also* Opp'n at 1 ("Does the Commerce Clause, or perhaps what is called

16  the Silent Commerce Clause, of the federal Constitution override the disciplinary authority of the

17  State of California with respect to conduct which has occurred solely in the foreign commerce of the

18  United States and which has no separate effects within that State?").

19        Based on papers filed by Defendants,[1] it appears that Defendants sought to revoke or suspend

20  Plaintiffs' license and permit for various reasons, including but not limited to the following:

21  (1)   Dispensing dangerous drugs at retail without being licensed as a pharmacy (as opposed to a

22        wholesaler), a violation of California Business & Professions Code § 4110.  *See* Cal. Bus. &

23        Prof. Code § 4110(a) ("No person shall conduct a pharmacy in the State of California unless

24        he or she has obtained a license from the board.").

25

26  _____

27        [1] Defendants have asked the Court to take judicial notice of filings made in the administrative
    proceeding. *See* Defs.' RJN & Exs. A-C. Because Plaintiffs have not objected to the request for judicial
    notice and because judicial notice of the documents is appropriate under Federal Rule of Evidence 201,
28  the Court grants Defendants' request.

(2)     Failing to obtain a DEA registration to dispense and export dangerous drugs, a violation of

21 C.F.R. § 1301.11(a), thereby violating California Business & Professions Code §

4059.5(e).  *See* 21 C.F.R. § 1301.11(a) ("Every person who manufactures, distributes,

dispenses, imports, or exports any controlled substance or who proposes to engage in the

manufacture, distribution, dispensing, importation or exportation of any controlled substance

shall obtain a registration unless exempted by law or pursuant to §§ 1301.22-1301.26."); Cal.

Bus. & Prof. Code § 4059.5(e) ("A dangerous drug or dangerous device shall not be

transferred, sold, or delivered to a person outside this state, whether foreign or domestic,

unless the transferor, seller, or deliverer does so in compliance with the laws of this state and

of the United States and of the state or country to which the dangerous drugs or dangerous

devices are to be transferred, sold, or delivered.").

(3)     Transferring, selling, or delivering dangerous drugs outside of the United States to persons

unauthorized by local and international law to receive the drugs, a violation of California

Business & Professions Code § 4059.5(e).  For example, Plaintiffs allegedly exported

dangerous drugs to a foreign country subject to a trade embargo by the United States without

prior government approval.

## II.   DISCUSSION

A.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for

"failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding

whether to dismiss, a court may consider only the facts alleged in the complaint, documents attached

as exhibits or incorporated by reference in the complaint, and matters of which the court may take

judicial notice.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . .

consider certain materials -- documents attached to the complaint, documents incorporated by

reference in the complaint, or matters of judicial notice -- without converting the motion to dismiss

into a motion for summary judgment.").  The court must accept the plaintiff's allegations in the

complaint as true and construe them in the light most favorable to the plaintiff.  *See Janas v.*

*McCracken (In re Silicon Graphics Sec. Litig.)*, 183 F.3d 970, 983 (9th Cir. 1999).  Dismissal is

**United States District Court**
For the Northern District of California

1   improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

2   claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

3        Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may also move to dismiss

4   for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1)

5   jurisdictional attack may be facial or factual.  In a facial attack, the challenger asserts that the

6   allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By

7   contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves,

8   would otherwise invoke federal jurisdiction. " *Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.

9   2004).  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond

10  the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.*

11       In their motion, Defendants ask the Court to dismiss Plaintiff's case pursuant to both Rule

12  12(b)(6) and 12(b)(1).  More specifically, Defendants argue that Plaintiffs' case should be dismissed

13  (1) because the State has sovereign immunity under the Eleventh Amendment; (2) because the State

14  is not a "person" who may be sued for a § 1983 violation; (3) because the Board and its officers

15  have absolute immunity from suit; (4) because *Burford* abstention is applicable; and (5) because

16  *Younger* abstention is applicable.  To the extent that Defendants seek dismissal of the case based on

17  abstention doctrines, Defendants are not so much challenging subject matter jurisdiction (Plaintiffs'

18  § 1983 claim undoubtedly falls under federal question jurisdiction) as arguing that the Court should

19  decline from asserting jurisdiction as a matter of equity and comity.  *See Quackenbush v. Allstate*

20  *Ins. Co.*, 517 U.S. 706, 727-28 (1996) ("[T]he power to dismiss under the *Burford* doctrine, as with

21  other abstention doctrines, derives from the discretion historically enjoyed by courts of equity. . . .

22  [The] exercise of this discretion must reflect 'principles of federalism and comity.'"); *Attorney*

23  *General of Guam v. Torres*, 419 F.3d 1017, -- (9th Cir. 2005) (stating that "evolution of the *Younger*

24  abstention doctrine has confirmed that it is based on considerations of equity and comity").

25  B.    <u>Sovereign Immunity Under the Eleventh Amendment</u>

26       Defendants argue first that the case should be dismissed -- both against the Board and its

27  executive director Ms. Harris, sued in her official capacity -- because they are protected by

28  sovereign immunity pursuant to the Eleventh Amendment.

**United States District Court**
For the Northern District of California

"Eleventh Amendment immunity extends to state agencies and other governmental entities that can be viewed as 'arms of the State.'" *Maryland Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255 261 n.8 (4th Cir. 2005) (citing *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) ("[A] State and its 'arms' are, in effect, immune from suit in federal court.").  As noted by Plaintiffs, however, Defendants have not provided any evidence nor even made any argument as to why the Board is a State agency or arm of the State.  *See Fresenius Med. Care Cardiovascular Res. Inc. v. Puerto Rico*, 322 F.3d 56, 61 (1st Cir. 2003) (stating that the entity asserting Eleventh Amendment immunity "bears the burden of showing it is an arm of the state"); *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002) ("[T]he entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, *i.e.*, that it is an arm of the state."); *ITSI TV Prods. v. Agricultural Ass'ns*, 3 F.3d 1289, 1292 (9th Cir. 1993) ("[T]he public entity ought to bear the burden of proving the facts that establish its immunity under the Eleventh Amendment.").  Accordingly, the Court denies without prejudice the Board's claim of immunity under the Eleventh Amendment.

While sovereign immunity might protect the Board from suit, *see Cozzo v. Tangipahoa Parish Council-President Gov't*, 279 F.3d 273, 280-81 (5th Cir. 2002) ("When a state agency is the named defendant, the Eleventh Amendment bars suits for both money damages and injunctive relief unless the state has waived its immunity."), it does not protect Ms. Harris, even in her official capacity, because Plaintiffs do not seek any monetary damages, but only declaratory and injunctive relief to enjoin a violation of federal law.

> A state's sovereign immunity from suit in federal court normally extends to suits against its officers in their official capacities.  The Supreme Court set forth an exception, however, in *Ex parte Young*.  Under the *Ex parte Young* doctrine, a plaintiff may maintain a suit for prospective relief against a state official in his official capacity, when that suit seeks to correct an ongoing violation of the Constitution or federal law.

*Cardenas v. Anzai*, 311 F.3d 929, 934-35 (9th Cir. 2002).  *See generally Ex parte Young*, 209 U.S. 123, 160 (1908).  Ms. Harris' claim to immunity is therefore without merit.

**United States District Court**
For the Northern District of California

C.     "Person" Subject to Suit Under § 1983

Defendants argue next that the Board as an arm of the State cannot be sued pursuant to § 1983 because § 1983 actions may be brought only against a "person" and the State does not qualify as such.  *See* 42 U.S.C. § 1983 (authorizing claims against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws").

The Supreme Court has held that "a State is not a 'person' within the meaning of § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989).  However, as noted above, Defendants have not presented any evidence or argument showing that the Board should be considered an arm of the State.  Again, the Court rejects the Board's argument without prejudice.

As for Ms. Harris, Plaintiffs are not precluded from seeking declaratory and injunctive relief against her in her official capacity.  The Supreme Court has held that "[s]tate officers *sued for damages* in their official capacity are not 'persons' for purposes of [a § 1983] suit because they assume the identity of the government that employs them." *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (emphasis added).  But "a state official in his or her official capacity, *when sued for injunctive relief*, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10 (internal quotation marks omitted; emphasis added).

D.     Absolute Immunity

Defendants claim that "another barrier" to Plaintiff's lawsuit is Defendants' absolute immunity from suit under § 1983 -- more specifically, absolute prosecutorial immunity.  Mot. at 5. Defendants cite *Romano v. Bible*, 169 F.3d 1182 (9th Cir. 1999), in support.  In *Romano*, the Ninth Circuit held, *inter alia*, that the Nevada Gaming Control Board, which initiated disciplinary proceedings against the plaintiff, was protected by absolute prosecutorial immunity.  *See id.* at 1187.

*Romano*, however, dealt with immunity from a suit for damages.  *See id.* at 1185 (noting that plaintiff's complaint asked for compensatory and punitive damages).  "[E]ntitlement to absolute

1  immunity from a claim for damages . . . does not bar the granting of injunctive relief or of other

2  equitable relief." *Shmueli v. City of New York*, No. 03-0287-pr, 2005 U.S. App. LEXIS 19773, at

3  *20 (2d Cir. Sept. 14, 2005); *see also Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 n.1

4  (5th Cir. 1997) ("It is well established law in this Circuit that the defenses of qualified and absolute

5  immunity do not extend to suits for injunctive relief under 42 U.S.C. § 1983."); *Roe v. City &*

6  *County of San Francisco*, 109 F.3d 578, 586 (9th Cir. 1997) ("The individual prosecutors' absolute

7  immunity protects them only from damages claims, not from suits for prospective injunctive

8  relief.").

9        Defendants also suggest that they are entitled to not only prosecutorial immunity, but also

10  judicial immunity.  *See Romano*, 169 F.3d at 1186 ("Judges and those performing quasi-judicial

11  functions are absolutely immune from damages for acts performed within their judicial capacities.").

12  Again, however, *Romano* addressed only immunity from damages, not injunctive relief.  Defendants

13  have not made any argument as to whether absolute judicial immunity from injunctive relief is

14  possible under the provision of § 1983, which states that, "in any action brought against a judicial

15  officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be

16  granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. §

17  1983.  However, even if this argument had validity with respect to the Board, before whom the

18  administrative proceeding against Plaintiffs is taking place, Ms. Harris appears to be acting in a

19  prosecutorial capacity only.  *See* Defs.' RJN, Ex. A (asserting that Ms. Harris "brings this

20  Accusation solely on her official capacity as the Executive Officer of the Board of Pharmacy").  The

21  Court therefore denies Defendants' claim of absolute judicial immunity without prejudice.

22  E.    *Burford* Abstention

23        Defendants contend that, even if Plaintiffs' complaint is not dismissed for the reasons

24  discussed above, the Court should as a matter of equity and comity decline jurisdiction under the

25  *Burford* abstention doctrine.  Under *Burford* abstention,

26        [w]here timely and adequate state-court review is available, a federal
        court sitting in equity must decline to interfere with the proceedings or

27        orders of state administrative agencies: (1) when there are "difficult
        questions of state law bearing on policy problems of substantial public

28        import whose importance transcends the result in the case then at bar";

United States District Court

For the Northern District of California

or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Public Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362 (1989) [hereinafter *NOPSI*].

The Ninth Circuit has stated that "*Burford* abstention 'is concerned with protecting complex state administrative processes from undue federal interference.'" *Poulos v. Caesars World, Inc.*, 379 F.3d 654, 671 (9th Cir. 2004); *see also Kern-Tulare Water Dist. v. Bakersfield*, 828 F.2d 514, 516 (9th Cir. 1987) ("The purpose of *Burford* abstention is the avoidance of federal intrusion into matters which are largely of local concern and which are within the special competence of local courts."). It has also identified three factors that must be present for *Burford* abstention to apply: "(1) that the state has concentrated suits involving the local issue in a particular court; (2) the federal issues are not easily separable from complicated state law issues with which the state courts may have special competence; and (3) that federal review might disrupt state efforts to establish a coherent policy." *Tucker v. First Md. Savs. & Loan, Inc.*, 942 F.2d 1401, 1495 (9th Cir. 1991); *see also Poulos*, 379 F.3d at 671 (reciting same factors).

Assuming that timely and adequate state-court review is available (an issue that is discussed below with respect to the *Younger* abstention doctrine), *see NOPSI*, 491 U.S. at 362, the Court concludes that *Burford* abstention is not applicable to the instant case. While the State does have a relatively complex regulatory scheme in place with respect to pharmaceutical licensing and permitting, the question in this case is essentially "a pure constitutional challenge" that would not require the Court to intrude into proceedings involving that scheme. *Matson Navigation Co., Inc. v. Hawaii Public Utils. Comm'n*, 742 F. Supp. 1468, 1476 (D. Haw. 1990) (finding *Burford* abstention inapplicable because "the question presented is a pure constitutional challenge to a[] [Hawaii Public Utilities Commission] order issued pursuant to a state statute which allegedly encroaches on an area reserved solely for federal regulation [--] [a] determination with respect to the facial validity of an administrative order does not interfere with the processes of state government, nor does it require this court to have any local administrative expertise"). The federal constitutional issue is "easily separable from complicated state law issues" and presents an issue over which the state courts do not

United States District Court

For the Northern District of California

1   have "special competence." *Tucker*, 942 F.2d at 1495.  *Burford* abstention is therefore

2   inappropriate.

3   F.      *Younger* Abstention

4          Finally, Defendants contend that, regardless of the applicability of *Burford* abstention, the

5   Court should dismiss the case pursuant to *Younger* abstention.  As noted above, *Younger* abstention

6   is not a jurisdictional matter but rather a matter of equity and comity.  *See Attorney General of*

7   *Guam*, 419 F.3d 1017.  "As a general matter, the federal courts' obligation to adjudicate claims

8   within their jurisdiction [is] virtually unflagging," and "there are limited circumstances in which . . .

9   abstention by federal courts is appropriate."  *Meredith v. Oregon*, 321 F.3d 807, *amended by* 326

10  F.3d 1030 (9th Cir. 2003), *entirety reprinted as amended in* No. 01-35869, 2003 U.S. App. LEXIS

11  7310, at *22-23 (9th Cir. Apr. 18, 2003) (internal quotation marks omitted).  Indeed, these

12  "circumstances are carefully defined and remain the exception, not the rule."  *Id.* at *23 (internal

13  quotation marks omitted).  "*Younger* abstention is proper only when the federal relief sought would

14  interfere in some manner in the state court litigation." *Id.* at *22 (internal quotation marks omitted).

15         Application of *Younger* abstention turns on a three-part test.

16                 *Younger* and its progeny generally direct federal courts to
                   abstain from granting injunctive or declaratory relief that would
17                 interfere with pending state judicial proceedings.  Absent
                   "extraordinary circumstances," abstention in favor of state judicial
18                 proceedings is required if the state proceedings (1) are ongoing, (2)
                   implicate important state interests, and (3) provide the plaintiff an
19                 adequate opportunity to litigate federal claims.

20  *Hirsh v. Justices of the Supreme Court*, 67 F.3d 708, 712 (9th Cir. 1995) (citing *Middlesex County*

21  *Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

22         Plaintiffs do not contest that the first *Younger* prong has been satisfied -- *i.e.*, that there are

23  ongoing state judicial proceedings by virtue of the administrative proceeding initiated by Defendants

24  against Plaintiffs.  *See also Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619,

25  627 (1985) (noting that *Younger* abstention has been applied to "state administrative proceedings in

26  which important state interests are vindicated, so long as in the course of those proceedings the

27  federal plaintiff would have a full and fair opportunity to litigate his constitutional claim").  The

28  Court therefore focuses on the second and third *Younger* prongs.

**United States District Court**
For the Northern District of California

1.     <u>Important State Interests</u>

Plaintiffs argue that the administrative proceeding before the Board does not implicate important state interests because Plaintiffs' actions -- *i.e.*, exporting pharmaceuticals -- do not affect any citizen of California: "Plaintiffs do not sell to, or do business with, any end-consumers within the state of California." Opp'n at 3 (emphasis in original).

When determining a state's interests, a court does not "look narrowly to [the state's] interest in the *outcome* of a particular case" but rather to "the importance of the generic proceedings to the State." *NOPSI*, 491 U.S. at 365 (emphasis in original). The proper inquiry therefore is not whether the State has an important interest in regulating Plaintiffs for their exporting of pharmaceuticals; rather, the issue is whether the State has an important interest in the regulation of pharmacists, pharmaceutical retailers, or pharmaceutical wholesalers who are located in and licensed by the State.

Plaintiffs' argument that state interests are absent when the activity at issue concerns only sales abroad, while superficially appealing, is not convincing. Even if the purchasers of the pharmaceuticals live outside the State, the pharmacists, retailers, or wholesalers are still located in and licensed by California. The State has an interest in maintaining the integrity of its pharmaceutical profession, especially since the profession profoundly touches upon public health and welfare. Any licensee who wilfully violates clear provisions of law designed to protect public safety presents an enhanced risk to the public health and welfare. Moreover, the activity at issue here is not confined to exportation in violation of federal law; it also includes engaging in sales exceeding the scope of the California permit for wholesale. California has a substantial interest in limiting licensees to activities within the scope of their permits, particularly where pharmaceutical (including controlled) substances are involved.

Moreover, the unlawful activities of pharmacists, retailers, or wholesalers located in California, can affect California citizens even if their sales are out of state. For example, the pharmacists, retailers, or wholesalers might maintain stores of dangerous drugs in the State even if the drugs are ultimately to be distributed abroad. Unlawful conduct by and lawsuits brought against such pharmacists, retailers, or wholesalers in the State could have economic repercussions within the

**United States District Court**

For the Northern District of California

1   State (*e.g.* damaging the reputation of California pharmacists generally, causing loss of business

2   income and employment, etc.).

3       Accordingly, the Court concludes that enforcement of the matters asserted in the

4   administrative proceeding against Plaintiffs does, as a general matter, implicate important state

5   interests.

6       2.   <u>Adequate Opportunity to Litigate Federal Claim in Ongoing State Proceeding</u>

7       The Court turns to the third *Younger* prong -- *i.e.*, whether the ongoing administrative

8   proceeding against Plaintiffs provides them with an adequate opportunity to litigate their federal

9   claim. "[T]he burden [is on Plaintiffs] to show 'that state procedural law bars presentation of [their]

10  constitutional claim[].'" *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987); *seel also Baffert v.*

11  *California Horse Racing Bd.*, 332 F.3d 613, 619 (9th Cir. 2003) (noting the same; adding that "[w]e

12  must assume that state procedures afford an adequate remedy, in the absence of unambiguous

13  authority to the contrary").

14      Plaintiffs argue that they do not have an adequate opportunity to litigate their federal claim

15  because they cannot raise the constitutional claim in the administrative proceeding against them and

16  because they may not be able to litigate the claim in state court in a timely fashion, *i.e.*, prior to

17  revocation of the license and permit.  Plaintiffs are correct that they cannot raise the federal

18  constitutional claim in the administrative proceeding before the Board, because the claim, if

19  successful, would effectively invalidate the California statutory scheme conferring Board

20  jurisdiction and enforcement over foreign commerce.  California Constitution Art. III, Section 3.5

21  precludes the Board from adjudicating such a constitutional claim.  *See Kenneally v. Lungren*, 967 F.

22  2d 329, 332 (9th Cir. 1992) ("Article III, § 3.5 of the California Constitution prohibits administrative

23  bodies from declaring statutes unconstitutional or refusing enforcement of statutes on the basis of

24  claims that such statutes are unconstitutional.").  Thus, the only opportunity for Plaintiffs to litigate

25  their federal claim in a state proceeding would be through judicial review by the California Superior

26  Court by way of administrative mandamus.

27      However, a petition for writ of mandamus and any ancillary request for stay of an

28  administrative order might not be heard before the Board's revocation or suspension of Plaintiffs'

1  license and permit takes effect.  Under California Government Code § 11519, Defendants could

2  *immediately* revoke or suspend Plaintiffs' license and permit.  The statute provides in relevant part:

3  "The decision [of the administrative agency] shall become effective 30 days after it is delivered or

4  mailed to respondent unless: a reconsideration is ordered within that time, *or the agency itself orders*

5  *that the decision shall become effective sooner*, or a stay of execution is granted."  Cal. Gov't Code

6  § 11519(a) (emphasis added).  If Defendants immediately revoked or suspended Plaintiffs' license

7  and permit, Plaintiffs would not have the opportunity to present their constitutional claim to the state

8  court for judicial review and have the claim considered before the revocation or suspension would

9  take effect.  Defendants have not stipulated to stay any revocation or suspension order to permit

10  Plaintiffs an opportunity to file a petition for writ of mandamus and seek a stay of the order in the

11  California Superior Court.  In short, Plaintiffs could be left without a pre-deprivation remedy.

12      For *Younger* abstention, the adequacy of the opportunity to litigate the federal claim in a

13  state proceeding requires that such opportunity be timely -- *i.e.*, prior to the administrative

14  deprivation.  This was made clear in a trilogy of Ninth Circuit cases: *Kennealy*, *Baffert*, and

15  *Meredith*.

16      In *Kennealy*, the plaintiff filed a § 1983 suit in federal court, seeking to enjoin the California

17  Attorney General and members of the State medical board from holding an administrative hearing to

18  revoke his physician's license.  *See Kennealy*, 967 F.2d at 330-31.  The plaintiff argued that

19  *Younger* abstention was not applicable because he would not be able to litigate his federal

20  constitutional claims in the state administrative proceeding due to, *inter alia*, the inadequacy of the

21  proceeding.  *See id.* at 331.  The Ninth Circuit acknowledged that, under the California Constitution,

22  administrative bodies were prohibited from declaring statutes unconstitutional or refusing

23  enforcement of statutes on the basis of claims that such statutes are unconstitutional.  *See id.* at 332

24  (citing Article III, § 3.5 of the California Constitution).  "However, 'even if a federal plaintiff cannot

25  raise his constitutional claims in state administrative proceedings that implicate important state

26  interests, his ability to raise the claims via state judicial review of the administrative proceedings

27  suffices.'"  *Id.*  There was the possibility of judicial review of the administrative proceeding via a

28  petition for a writ of mandate pursuant to California Code of Civil Procedure 1094.5.  *See id.*

United States District Court
For the Northern District of California

The *Kenneally* plaintiff contended, however, that he would not have a meaningful opportunity to present his federal constitutional claims to the state court (as part of judicial review) "because the Board will revoke his license immediately upon conclusion of the [administrative] hearing." *Id.* When the Board stipulated that it would stay the revocation of his license for thirty days, the plaintiff argued that this would not make any difference because the filing of a petition for a writ of mandate would not stay the Board's revocation order and his constitutional claims could not be heard and resolved by the state court within the thirty-day stay period. *See id.*

The Ninth Circuit rejected the plaintiff's argument because, even though the Board's order would not be automatically stayed pending review by the state court, the state court had the discretion to stay the Board's order and, in exercising this discretion, the state court -- under § 1094.5 -- had to make a preliminary assessment of the merits of the petition. *See id.* at 332-33. Thus, the Ninth Circuit concluded that "[t]he statutory framework provides a meaningful opportunity for [the plaintiff] to present his constitutional claims for independent judicial review *prior* to the Board's decision becoming effective." *Id.* at 333 (emphasis added). The court acknowledged that the state court "may decide not to stay the Board's administrative order beyond the 30-day stay period [stipulated to by the Board]. But this does not mean that [the plaintiff] will not have had an opportunity to present his constitutional claims to the state court for its review and have those claims considered *before the Board's order takes effect*. Nothing under California law limits [the plaintiff] from presenting his claims at the stay hearing [before the state court]." *Id.* (emphasis added).

Thus, in *Kenneally*, the administrative proceeding was deemed adequate only because the medical board stipulated to a thirty-day stay of its revocation order. This guaranteed the plaintiff an opportunity to seek a stay from the reviewing state court *before* the medical board's order would go into effect. While, under *Kenneally*, a plaintiff need not be guaranteed actual substantive review, *Younger* requires that the plaintiff be afforded an opportunity to present and have considered the merits of the federal claim before suffering the deprivation.

The importance of timely opportunity to present the federal claim prior to deprivation was subsequently confirmed by the Ninth Circuit in *Baffert*, where the court expressly acknowledged

13

United States District Court

For the Northern District of California

1  that "there are instances in which timeliness plays a role in the adequacy of a state forum." *Baffert*,

2  332 F.3d at 620.  In *Baffert*, the plaintiff challenged drug testing procedures of the California Horse

3  Racing Board which suspended his license.  Because the plaintiff was not attacking a statute or

4  regulatory scheme, but only the constitutionality of the drug testing procedures, the agency was not

5  barred from adjudicating his federal claim as in *Kenneally*.  *See id.* at 620.  Moreover, the

6  suspension was in fact stayed by the state court pending appeal.  *See id.* at 620-21.  Accordingly, the

7  Ninth Circuit concluded that there was no timeliness problem because the plaintiff did not "show[]

8  that he will be forced to serve his [sixty-day] suspension *before* he has had a chance to adjudicate his

9  federal claims in the state forum.  *Id.* at 620 (emphasis added).

10  In contrast, in *Meredith*, the Ninth Circuit held that the plaintiff was not afforded a timely

11  opportunity to present his federal claim in the state proceeding.  In *Meredith*, the plaintiff owned a

12  vacant parcel of property adjacent to a highway and erected a sign on the property.  *See Meredith*,

13  2003 U.S. App. LEXIS 7310, at *2.  The state initiated an enforcement action against the plaintiff on

14  the basis that the sign violated the Oregon Motorist Information Act.  *See id.*  The plaintiff

15  challenged the constitutionality of the state statute at an administrative hearing but the

16  administrative law judge ("ALJ") dismissed the claim and ordered the plaintiff to remove the sign

17  immediately or pay the state to remove the sign.  *See id.* at *2-4.  The plaintiff subsequently changed

18  the content of his sign two times -- ultimately the content of the sign asserted that the Department of

19  Transportation violated federal and state law -- and asked for a stay of further enforcement

20  proceedings until he could establish the legality of the new sign.  *See id.* at *4-5.  The Department

21  denied the request for a stay and hearing to introduce evidence of the amended sign.  *See id.* at *5.

22  Subsequently, the plaintiff filed suit in district court, seeking a declaratory judgment that the

23  state statute violated, *inter alia*, the First Amendment and a preliminary injunction enjoining the

24  Department from further enforcing the statute.  *See id.*  After the ALJ issued his final order requiring

25  the plaintiff to remove the sign or pay the state to remove the sign, the plaintiff appealed the ALJ's

26  ruling to the state court of appeals.  *See id.* at *5-6.

27  In rejecting *Younger* abstention, the court reiterated that "*Younger* abstention 'presupposes

28  the opportunity to raise *and have timely decided* by a competent state tribunal the federal issues

14

**United States District Court**
For the Northern District of California

1  involved.'" *Id.* at *28 (emphasis in original).  It then acknowledged that, under state law, the

2  plaintiff had "several options for challenging the ALJ's final order and for presenting his federal

3  constitutional claims in state court." *Id.*  However, "[n]one of these options provided [the plaintiff]

4  with 'timely' adjudication of his federal claims." *Id.* at *28-29.

5          As in *Kenneally*, the plaintiff did not have an opportunity to present his federal constitutional

6  claims (which stemmed from the second amended sign) "*before* the ALJ issued his final order." *Id.*

7  at *29 (emphasis in original; citing *Kenneally*).  Moreover, the plaintiff "did not have a 'full and

8  fair' opportunity to present his federal claims *after* the ALJ issued the final order because [under

9  state law] he could not obtain a stay of enforcement of the final order within thirty days before he

10 was required to take down his sign." *Id.* at *30 (emphasis in original).  The Ninth Circuit added that

11 it was not possible for the plaintiff to receive a timely stay directly from the state court of appeals.

12 *See id.* at *32 (noting that the plaintiff could not pursue denial of a request for stay with a state court

13 "until after he already was required to remove his sign").  Thus, the crucial point in *Meredith* was

14 that the plaintiff "never had the opportunity, *before he was required by law to remove his sign*, to

15 have a state court consider the merits of his federal constitutional claims." *Id.* at *33 (emphasis

16 added).

17          In sum, *Kenneally*, *Baffert*, and *Meredith* establish that for there to be an "adequate

18 opportunity to litigate federal claims" as required by the third prong of *Younger*, the plaintiff must

19 have an opportunity to have the federal claim considered on the merits by the state tribunal *before*

20 the adverse administrative action takes effect.[2]

21          For the reasons stated above, Plaintiffs' license and permit in the case at bar are subject to

22 revocation or suspension before they have the opportunity to have their constitutional claim

23 considered.  Because Plaintiffs will not have an "adequate opportunity to litigate [their] federal

24 constitutional claim," *Younger* abstention is not appropriate in the instant case.

25

26 _____

27          [2] *Cf. Sniadach v. Family Fin. Corp.*, 395 U.S. 337 (1969) (concluding that interim freezing of
   wages violated due process because plaintiff had not been granted a pre-deprivation hearing); *Goldberg*

28 *v. Kelly*, 397 U.S. 254 (1970) (holding that due process required an evidentiary hearing prior to the state
   withholding welfare benefits).

**III.    CONCLUSION**

For the foregoing reasons, the Court denies Defendants' motion to dismiss.  Defendants shall file a response to Plaintiffs' complaint within twenty days of the filing date of this order.

A case management conference shall be held on November 23, 2005 at 1:30 p.m.  The parties shall file a joint case management conference statement on November 16, 2005.

This order disposes of Docket No. 8.


IT IS SO ORDERED.


Dated:  October 7, 2005

_____
EDWARD M. CHEN
United States Magistrate Judge

**United States District Court**
For the Northern District of California